WILLIAM C. SCRIBNER'S CASE.

Suffolk. March 6, 1918. — May 25, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Workmen's Compensation Act. Agency*, Existence of relation.

A driver in the general employ of an ice company was let for hire by the ice company with a pair of horses and a wagon to a coal company, by which he was employed to load and deliver coal, brick, wood, lime and cement and sometimes was given a helper in loading and in making deliveries. He took his orders from the office of the coal company and was told by one of the clerks employed there where to deliver his loads. He received his pay from the ice company and was expected by that company to look out for the horses and the wagon in his charge. Otherwise he was wholly under the direction and control of the coal company. When he was loading soft coal into a tip cart in the yard of the coal company he accidentally was hit on the wrist with a shovel by the man who was helping him and was injured. Both the ice company and the coal company were insured under the workmen's compensation act. For the injury above

described the Industrial Accident Board awarded the driver compensation to be paid by the insurer of the ice company. On appeal from a decree affirming this award, it was *held* that the driver at the time of his injury was acting as an employee of the coal company and not as an employee of the ice company, and it was ordered that the decree should be reversed.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board by which they awarded to William C. Scribner compensation to be paid by the Travelers Insurance Company, as the insurer of the Framingham Ice Company, for an injury sustained on January 26, 1917, when the claimant was alleged to have been in the employ of the Framingham Ice Company and was loading soft coal into a tip cart in the yard of the Framingham Coal Company, by reason of accidentally being hit on the right wrist with a shovel by a man who was helping him to load the tip cart.

In the Superior Court the case was heard by *Wait*, J. The evidence in regard to the employment of the claimant is described in the opinion. The judge made a decree in accordance with the decision of the Industrial Accident Board ordering the Travelers Insurance Company, as the insurer of the Framingham Ice Company, to pay to the claimant as the employee of that company a total compensation of $282.86. The insurer appealed.

*L. C. Doyle*, for the insurer.

*E. L. McManus*, for the employee, submitted a brief.

CARROLL, J. The employee, who was in the general employ of the Framingham Ice Company (hereinafter called the ice company), was injured while at work in the yard of the Framingham coal company (hereinafter called the coal company). Both companies were insured under the workmen's compensation act. The Industrial Accident Board awarded compensation against the insurer of the ice company. The only question before us on this appeal is, whether Scribner, at the time of his injury, was an employee of the ice company within the meaning of the workmen's compensation act.

The ice company let to the coal company a pair of horses, wagon and driver. This happened frequently; and on one occasion under this arrangement Scribner worked for the coal company two or three months. He received his wages from the ice company.

The proprietor of the ice company testified that he "looked to Scribner to take care of the horse and team which he owned," but "exercised no supervision with respect to his delivering coal; Scribner worked there the same as their man did, [and] took his orders from the office of the coal company." The employee testified that Twitchell (one of the clerks employed by the coal company) told him where to deliver the material; that he took his directions from Twitchell; that he helped to load coal, brick, wood, lime or cement; and that sometimes he had a helper when making deliveries.

"In determining whether, in a particular act, he is the servant of his original master or the person to whom he has been furnished, the general test is whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result." *Shepard* v. *Jacobs*, 204 Mass. 110, 112. "The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." *Coughlan* v. *Cambridge*, 166 Mass. 268, 277. Applying these tests, it is clear that Scribner at the time of the injury was an employee of the coal company. He was in that company's yard, engaged in its business and doing its work; and he was under its direction and subject to its orders. Whatever may have been the relation of Scribner to the ice company in the care and management of the horses, at the time of his injury he was engaged in work over which that company had no control. The business was that of the coal company and under its direction. The transaction between the two companies amounted only to a loan of the ice company's servant to the coal company, — the servant became the employee of the latter for the time being, and on the evidence he must be found to have assented to this although remaining in the general employment of the ice company. *Coughlan* v. *Cambridge, supra. Hasty* v. *Sears*, 157 Mass. 123. *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12 and cases cited.

*Pigeon's Case*, 216 Mass. 51, relied on by the employee, is distinguishable. In that case the driver was on his way to water the

horse which was owned by Shaw, the general employer, who retained the general direction of the employee except so far as his control was surrendered to the city of Springfield. This relation of control included the care of the horses to the extent, at least, of seeing that they were watered. When injured the employee was under the control of the original master and occupied in his work, and not engaged in the business of the city of Springfield nor under its direction. See, in this connection, *W. S. Quinby Co. v. Estey*, 221 Mass. 56; *Shepard v. Jacobs, supra; Delory v. Blodgett*, 185 Mass. 126.

In *Clancy's Case*, 228 Mass. 316, the deceased was not in the service of the defendant city nor under its direction when injured; he was the servant of his employer, McGillicuddy, and engaged in his business.

The record shows that the coal company was a subscriber. The employee's remedy under the workmen's compensation act was against the insurer of this company, by whom he was employed, and not against the insurer of the ice company.

This well established principle of the common law, which holds that an employee who is lent to a special employer as distinguished from his general employer, and who assents to the change of employment, becomes the servant of the employer to whom he is lent, applies as well to cases arising under the workmen's compensation act as to those at common law. The English workmen's compensation act, St. 6 Edw. VII, c. 58, § 13, in defining the word "employer" enacts, "where the services of a workman are temporarily lent or let on hire to another person by the person with whom the workman has entered into a contract of service . . . the latter shall, for the purposes of this act, be deemed to continue to be the employer of the workman whilst he is working for that other person." This statute was considered by the commission on compensation for industrial accidents, and in the "Report of the Massachusetts Commission on Compensation for Industrial Accidents" in its "Commentary on the Massachusetts Law" (pages 46, 47, 48, 52, 53) reference is made to the English act and to the English decisions, showing that these were called to the attention of the Legislature. See *McNicol's Case*, 215 Mass. 497, 499. We must assume from the refusal of the Legislature to adopt this particular section of the English statute that it

intended the common law principle should prevail when the services of an employee were transferred from the employment of his general employer to that of a special employer.

To decide, as we are now urged to do, that this rule has no application to proceedings under the workmen's compensation act, would in many cases deprive the injured employee of the benefits which the act was intended to give him, and which can be enforced only by reliance on the common law rule.

In the first section of the workmen's compensation act it is provided that, if the employer is not a subscriber, the injured employee can recover in an action at law by establishing the negligence of the employer. If such an employee, who is lent to an employer and is injured by reason of this employer's negligence, remains the employee of the general employer, it would be difficult if not impossible for him to avail himself of the right given him under this section; for, if injured while engaged in the business of the special employer, under ordinary circumstances it could not be said that the negligence of the general employer caused his injury. His remedy under this section is against the person who is in fact his employer. To abandon the common law rule would make this important section ineffective in many, if not all, of the cases where the employee is injured while temporarily in the employ of a special employer.

Under § 3 of Part II of the workmen's compensation act, if an employee is injured by the serious and wilful misconduct of a subscriber, or of any person regularly entrusted with and exercising the powers of superintendence, he can recover double compensation. The employee's rights under this section are based on the relation of master and servant, and he can recover only from his employer. If we should decide that an employee working for a special employer — notwithstanding his consent to the change — and injured while so employed remained the servant of the general employer, then the employee could not recover the additional compensation provided for in this section unless it could be said that he was injured by the serious and wilful misconduct of the general employer.

In the case at bar, if Scribner was an employee of the ice company and was injured by the serious and wilful misconduct of the coal company, he could not claim the double compensation

against the ice company if he was not injured by reason of that company's misconduct. And, if it were held, he was not an employee of the coal company but was in the employ of the ice company, he could have no relief against the coal company under this particular section, although injured by its serious and wilful misconduct. If the ice company was not a subscriber under the act, and the coal company was such a subscriber and he was injured by its serious and wilful misconduct, to recover the additional compensation under this section it would have to be decided that he was an employee of the coal company. Many other difficulties might be suggested where injustice would be done the employee if the common law principle were abolished.

There might also be obstacles in the way of enforcing the penalty (Part III, § 18) where the employer is required to report all injuries received by employees in the course of their employment, if it were held that an employee working for a special employer and engaged in his business, was not employed by him, but remained the employee of his general employer. In order to safeguard fully the rights of all parties, the well recognized common law rule should prevail in the application of the workmen's compensation act; and the one who is in fact the employer should be held for the consequences of his own neglect.

In *Arnett* v. *Hayes Wheel Co.* 201 Mich. 67, the facts were these: The Hayes company, a manufacturer, and the Grand Rapids Blowpipe and Dust Arrester Company, a contractor, entered into an agreement whereby the latter was to install a dust collecting system at the plant of the former, furnishing the skilled mechanics therefor, while the Hayes company was to furnish labor to help. A laborer so furnished, working as a helper to a mechanic and under the direction of the contractor but paid by the Hayes company as his general employer, was injured; it was held that the general employer, the Hayes company, was not liable under the workmen's compensation act, but that the special employer, the Grand Rapids company, was liable.

In *Pigeon's Case* and in *Clancy's Case, supra,* the common law rule appears to have been assumed. See *King's Case,* 220 Mass. 290; *Comerford's Case,* 224 Mass. 571; *S. C.* 229 Mass. 573, where this rule was recognized. And, in this connection, see *Humphrey's Case,* 227 Mass. 166, 167. The cases of *Rongo* v.

*R. Waddington & Sons, Inc.* 87 N. J. L. 395, *Matter of Dale* v. *Saunders Brothers,* 218 N. Y. 59, *Matter of De Noyer* v. *Cavanaugh,* 221 N. Y. 273, *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807, were decided under statutes which differ in material respects from the workmen's compensation act of this Commonwealth. We do not consider them applicable.

It follows that the decree must be reversed and a decree entered in favor of the insurer.

*So ordered.*