HATTIE M. PARSONS *vs.* M. J. DALY & SONS ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

144

Argued October 14th, 1931—decided January 19th, 1932.

*Edward S. Pomeranz,* with whom were *S. Polk Waskowitz* and *George Miske,* for the appellants (defendants M. J. Daly & Sons, Inc., and The Shipley Construction & Supply Company).

*Philip Pond,* with whom, on the brief, was *Joseph B. Morse,* for the appellees (other defendants).

*John T. Monzani,* for the appellee (plaintiff).

HAINES, J. The record discloses that the original claim for compensation was made against M. J. Daly & Sons (herein called "the Dalys"), the first hearing

being held July 25th, 1927. The Dalys were represented before the commissioner, as well as their insurer, the American Mutual Liability Insurance Company. Believing that a complete determination of the issues required additional parties, the commissioner summoned in R. F. Worden & Sons, Inc. (herein called "the Worden Company") and the Shipley Construction & Supply Company of New York (herein called "the Shipley Company"), the latter also being insured by the American Mutual Liability Insurance Company, and all parties have since been represented. After various hearings, the commissioner prepared a careful and well arranged finding of facts and annexed thereto a memorandum of decision and entered an award in due form under date of July 15th, 1930, dismissing the claim against the Worden Company and requiring compensation to be paid by the Dalys and the Shipley Company. The delay in reaching a final decision resulted from the belief of the commissioner and of counsel for the claimant that an adjustment of liability would be made between the respondent parties themselves, but all negotiations to that end terminated without result February 10th, 1930. In the meantime the Dalys had voluntarily advanced compensation to the claimant. The Dalys and the Shipley Company, with their insurer, filed separate appeals to the Superior Court, and together moved for a correction of the finding, attaching to their motion various excerpts from the testimony. These appeals were joined by order of the Superior Court. The claimant, appellee, made no request for the certification of additional evidence, but the Worden Company notified the commissioner in writing that certain other evidence was relevant and material and filed such additional excerpts with the commissioner for certification.

The excerpts filed by the appellants were not certi-

fied by the secretary or stenographer to be correct transcripts, there being a form of certification attached but without the signature of either secretary or stenographer. These excerpts, however, were certified by the commissioner. The additional excerpts filed by the Worden Company were never certified by either the secretary, stenographer, or the commissioner. The commissioner filed a memorandum saying that the ultimate order would be that the entire evidence be certified to the Superior Court as it should all be before that court, though expressing the opinion that neither the parties nor the State should be put to the expense of printing the entire evidence. It does not appear that such an order was ever entered. Under the circumstances, it not appearing that the entire evidence was certified, it is difficult to understand how the trial court in its memorandum upon the motion to correct, could state that it had examined all the evidence and in the light of it hold the excerpts insufficient to justify the motion. The importance of conforming to the procedure which we outlined in *Taylor* v. *St. Paul's Universalist Church,* 107 Conn. 248, 140 Atl. 124, is pointedly illustrated by this record.

It is highly desirable, however, to bring about a determination of this case, which has been delayed for a long time, and a remand would cause further delay and much expense. Furthermore, counsel for the contending parties have argued the case on the basis of the present record and opposing counsel have waived any objection to those portions of the evidence which have not been certified. Under these circumstances we have felt justified in taking up the consideration of the claimed corrections of the finding in the light of the evidence printed in the record before us.

The general situation as presented by the finding is that Worden & Sons, Inc., are engaged in bottling and

selling milk and cream and manufacturing ice cream; Daly & Sons are pipe and steam fitters, doing special work and installing or assisting in installing special apparatus at various factories; the deceased, who was the husband of the present claimant, had been for many years an employee of the Dalys. The Worden Company had bought some refrigerating apparatus from the Shipley Company, and certain pipes and fittings essential in connection with the apparatus were purchased by the Worden Company from the Dalys, which included one pipe fifteen feet long and six inches in diameter, weighing fifteen hundred pounds. The deceased and his son, who acted as his helper, were raising this pipe to the roof of the Worden Company's plant when it came in contact with a heavily charged electric wire, causing the death of Parsons.

A careful checking and analysis discloses no real contradictions in the evidence, and it convinces us that some changes must be made in the finding. The evidence shows conclusively that the refrigerating apparatus was bought from the Shipley Company f. o. b. Waterbury, and the contract contained no provision whatsoever for installation, nor does it appear that there was any oral agreement therefor. It does appear, however, that the Worden Company, after purchasing the apparatus, undertook in its own behalf to install it with the necessary piping for that purpose, and Liebold, its superintendent and vice president, sent for men from both the Shipley Company and the Dalys to do the work for the Worden Company, Styffe being obtained from the Shipley Company and Parsons, the deceased, and his son from the Dalys. Styffe, as an expert, was put in charge of the installation by the Worden Company, and Parsons, as an expert pipe man, was to do whatever Styffe directed. It further appears that Styffe, while at the Worden plant for

a number of months on this occasion, did, upon its request, other miscellaneous work for the Worden Company. The entire work was under the general control and direction of Liebold and was thus being done by men loaned to the Worden Company by the Shipley Company and the Dalys for that purpose. Liebold constantly inspected and supervised the work, though the details and methods of accomplishing it were naturally left to Styffe as the expert workman. At least one important change in the general plan of the work was made upon the initiative and order of Liebold after consulting with Styffe. Both Styffe and Parsons voluntarily entered the employ of the Worden Company at the request and upon the application of Liebold made to the respective companies, and their services were paid for by the Worden Company direct to the Shipley Company and the Dalys at a fixed price per day and expenses, and the respective general employers, in turn, paid their men each a daily wage. Neither the Shipley Company nor the Dalys ever had or exercised any direction or control whatever over the work thus being done at the Worden plant, and it continued under the general direction of Liebold for nearly a month before the deceased was injured. To this extent the requested changes in the finding are granted.

The controlling question is, by whom was Parsons employed within the meaning of our compensation law at the time of his injury? While both Styffe and Parsons remained the general employees of their respective employers, the Shipley Company and the Dalys, yet, when they were loaned to the Worden Company for installation by it of its refrigerating plant, the Worden Company became the special employer of both with the consequences which attach to such a relationship under the compensation law. Per-

haps no better statement of the rule as to the status of a loaned employee can be found than the following: "It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him the men to do the work and places them under his exclusive control in the performance of it, those men became *pro hac vice* the servants of him to whom they are furnished." *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 221, 29 Sup. Ct. 252; *Scribner's Case,* 231 Mass. 132, 120 N. E. 350; *Coughlan* v. *Cambridge,* 166 Mass. 268, 277, 44 N. E. 218; *Hertell* v. *Simonson Co.,* 218 N. Y. 345, 13 N. E. 255.

In *Scribner's Case, supra,* plaintiff was in the general employ of an ice company; his services were temporarily procured from the ice company by a coal company though he continued to receive his wages from the ice company, but the latter had no control or direction over his work while he was with the coal company, and he took all orders from the latter company. The court said: "The general test is whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result. *Shepard* v. *Jacobs,* 204 Mass. 110, 112 [90 N. E. 392]. The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired. *Coughlan* v. *Cambridge,* 166 Mass. 268, 277 [44 N. E. 218]." *Hasty* v. *Sears,* 157 Mass. 123, 31 N. E. 759; *Samuelian* v. *American Tool & Machine*

*Co..* 168 Mass. 12, 46 N. E. 98. Tested by this standard, we entertain no doubt as to the status of Parsons at the time of his injury. He was clearly a "loaned employee" from the Dalys to the Worden Company and subject at all times to the complete control of Styffe, who was himself a loaned employee from the Shipley Company and so, at that time, a representative of the Worden Company. Not only did the Worden Company undertake to do the work according to its own requirements and not only were these men directed by their general employers to do as the Worden Company instructed them, but the latter company made a very important change in the original plan for the installation by requiring different piping and the decision to do this was made by Liebold after consulting with Styffe, his expert. Obviously Liebold had the authority to stop the work or change the plans as his judgment dictated.

The principle is thoroughly well established at common law that an employee of one master who is loaned to another master and who assents to the change of masters, becomes the servant, for the time being, of him to whom he is lent, and this principle has full application to the master and servant relation under the compensation law. *Scribner's Case, supra,* p. 135.

While the status of a "loaned employee" as such has not been heretofore specifically presented to this court, the general principle has been recognized that if the servant, when injured, is engaged in the work of a master who has the right of control over the work to be done, then the latter is the master within the meaning of our Compensation Act and liable to pay compensation; *Lassen* v. *Stamford Transit Co.,* 102 Conn. 76, 128 Atl. 117; *Battey* v. *Osborne,* 96 Conn. 633, 115 Atl. 83; *Aisenberg* v. *Adams Co., Inc.,* 95 Conn. 419, 111 Atl. 591; *Kinsman* v. *Hartford Courant Co.,* 94 Conn.

156, 108 Atl. 562; *Thompson* v. *Twiss*, 90 Conn. 444, 97 Atl. 328; and the general rule as to a change of masters is touched upon in *Campbell* v. *New York, N. H. & H. R. Co.*, 92 Conn. 322, 329, 102 Atl. 597; *Corbin* v. *American Mills*, 27 Conn. 274; *Wennell* v. *Dowson*, 88 Conn. 710, 92 Atl. 663.

The appellee's argument in the present case is apparently based upon the assumption that the work upon which Styffe and Parsons were engaged was being done under a contract made by their respective general employers. The finding as it came to this court justified the argument from that angle, but as amended there is no ground for claiming that either the Shipley Company or the Dalys had contracted to do a particular job or accomplish a particular result for the Worden Company. On the contrary, the Shipley Company and the Dalys never had any obligation by contract to do this work. They had simply agreed with the Worden Company, upon the latter's application, that the latter could hire their employees, paying the employer a fixed price per day and expenses therefor, and the entire work was to be done by day labor. The final result was to be such as the Worden Company undertook to accomplish for itself by employing and supervising these men. The cases of *Manning* v. *Woodland Tobacco Co.*, 113 Conn. 282, 155 Atl. 61; *Palumbo* v. *Fuller Co.*, 99 Conn. 353, 122 Atl. 63; and *Fox* v. *Fafnir Bearing Co.*, 107 Conn. 189, 139 Atl. 778, which the appellees cite, have no controlling analogy under these circumstances.

There is error, and the case is remanded to the Superior Court to be returned to the commissioner to be proceeded with according to law.

In this opinion the other judges concurred.