## PASQUALE ACHILLE
*vs.*
## CHARLES GENONI ET AL.

Superior Court     Hartford County     File No. 60911

MEMORANDUM FILED OCTOBER 22, 1940.

*Hagearty, McDonough & Keefe,* of New Britain, for the Plaintiff.

*Cyril F. Gaffney,* of New Britain, and *Monroe S. Gordon,* of New Britain, for the Defendants.

FOSTER, J.   On November 14, 1938, the Works Progress Administration (hereafter called the W.P.A.) was engaged in work for the Town of Berlin.   In the prosecution of such work the W.P.A. paid the laborers and the Town of Berlin furnished certain materials, tools and appliances.   Among the appliances furnished by the Town of Berlin was a truck and its operator.   The W.P.A. had previously done work for the Town of Berlin, and, when doing such work, it had become the custom for the laborers to report for duty about 8 o'clock a.m. at the Kensington Post Office in the Town of Berlin and from there be transported to their work in a truck. The town had constructed a rack of cross seats, which could be placed in the body of the truck for the laborers to use upon being transported to their work.   This rack of seats had been built according to specifications furnished by the W.P.A.

On November 13, 1938, the superintendent of roads of the Town of Berlin notified the defendant Genoni that it was his turn to furnish his truck for W.P.A. work and that he was to report the truck for work the next morning.   The town had a contract with Genoni whereby Genoni furnished his truck and the operator of the same for work being done for the town by the W.P.A., and the town was to pay Genoni $1.50 per hour for the truck and operator.

On the morning of the 14th, Genoni drove his truck to the home of the defendant Aguzzi and hired him to operate the truck for the day and left Aguzzi in sole charge and control of the truck.

Aguzzi drove the truck to the Kensington Post Office, and about 12 laborers, who had congregated there waiting to be transported to the work in question, boarded the truck, occupying the rack of seats, which they themselves placed upon the truck.   Among this number was the plaintiff.

Aguzzi drove the truck to a nearby gasoline station for a

supply of gasoline and then started on his way to the locus. of the work with the load of laborers. The truck was what is known as a dump truck; that is to say, when two certain levers were manipulated, the front of the body of the truck would rise, so that by force of gravity the load would slide and be precipitated to the rear and out of the body of the truck. When the truck had done some little distance from the gasoline station, the front of the body of the truck suddenly and without warning rose and precipitated the laborers, who were seated in it, down to the rear and some of them out upon the ground.

The plaintiff was seated on a seat near the front of the body of the truck. He was thrown to the rear of the body of the truck and thereby received injuries.

The body of the truck dumped its contents—the laborers—to its rear and to the ground by reason of the fact that two levers were in such a position as to cause the body of the truck to so operate. These levers were in the floor of the cab of the truck in plain sight of Aguzzi, the operator of the truck. Aguzzi knew that when these levers were in a certain position the body of the truck would dump. At the time that the body dumped, Aguzzi was in sole control of the truck. At the time that Aguzzi took on gasoline the attendant of the gasoline station entered the cab of the truck, and Aguzzi left the cab to go into the office of the gasoline station and sign a receipt for the gasoline. He then returned to the truck and at the time the plaintiff received his injuries was the sole occupant of the cab, with the exception of one of the laborers. It may well be that it was the attendant of the gasoline station who moved the levers. It was the duty, however, of Aguzzi to exercise due care in the operation of the truck. He knew that the body of the truck was loaded with laborers. He testified as follows:

"Q—Mr. Aguzzi, when you went back on the truck after gas had been placed in the tank did you examine the levers controlling the hoist which raises or lowers the body of the truck to see whether or not they had been disturbed or were in the same condition?"

"A—No, I didn't look at them."

"Q—What's that?"

"A—I didn't look at them."

It was the duty of Aguzzi to see and know that the two levers were in such a position that the body of the truck would not rise and dump its contents.

I find that Aguzzi was guilty of negligence that was a proximate cause of the plaintiff's injuries.

Since Aguzzi was the admitted servant and agent of Genoni, it follows that Genoni was guilty of negligence that was a proximate cause of the plaintiff's injuries.

I find that at the time the plaintiff received his injuries Genoni's truck and the driver of the truck had been furnished to the W.P.A. by the Town of Berlin, and that the Town of Berlin had no control over the truck or over Genoni or Aguzzi. Genoni had simply been told by the superintendent of roads of the Town of Berlin that it was his turn to furnish a truck to the W.P.A. and to report that morning to the W.P.A. Genoni, by reason of past experience, went to the Kensington Post Office to begin his work for the W.P.A. by there securing the laborers employed by the W.P.A. and transporting them to the work in question. He was engaged in the business of W.P.A.—not in business of the Town of Berlin.

"The question is whether the business upon which he is engaged is that of his general employer or that of the hirer of the machine. That is determined by the extent of the control which the person whose work is being done had over him, whether he had control merely for the purpose of accomplishing the result intended, or had complete control over him as to all he did in the operation of the machine. If the former, the operator of the machine is engaged in the business of his general employer; if the latter, in that of the hirer of the machine. 'The test is whether, in the particular service he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired.'" *Tierney vs. Correia*, 120 Conn. 140, 145.

" 'It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him the men to do the work and places them under his exclusive control in the performance of it, those men become *pro hac vice* the servants

of him to whom they are furnished.'.... 'The general test is whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result.... The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired....' " *Parsons vs. Daly & Sons,* 114 Conn. 143, 149.

I find that the Town of Berlin is not liable for the plaintiff's injuries.

The plaintiff at the time he received his injuries was 62 years old. He had suffered an arthritic condition of his back for some years. He suffered a fracture of the left nasal bone, multiple bruises and a strain in the region of the left lower lumbar and upper sacral vertebrae. His fall lighted up the arthritis from which he had suffered. He was in bed five days; was hospitalized for one week in May, 1939, and for ten days in August, 1939. He has not been able to work since his fall in the truck and the prognosis of his condition is uncertain. The expert witnesses are unable to state what percentage of his present ailment is due to the arthritis and what percentage is due to the trauma. That the trauma aggravated the arthritis there can be no doubt. He had always worked as a laborer and for two years prior to receiving his injuries had worked for the W.P.A. earning $54 a month. His doctors' bills were $214.50.

Judgment may be entered in favor of the plaintiff to recover from the defendants, Charles Genoni and John Aguzzi, damages of $4,000; and judgment may be entered in favor of the defendant, the Town of Berlin, against the plaintiff.