**Patricia S. ABRAHAM, as Personal Representative of the Estate of Raymond Zedan Abraham, Deceased, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 90–3589.

United States Court of Appeals, Eleventh Circuit.

May 31, 1991.

David R. Lewis, Lewis, Paul, Isaac & Castillo, P.A., Lane Burnett, Jerry J. Waxman, Waxman & Siemer, PA., Jacksonville, Fla., for plaintiff-appellant.

Ralph J. Lee, Asst. U.S. Atty., Jacksonville, Fla., Wayne T. Ault, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before FAY and JOHNSON, Circuit Judges, and PECK *, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge:

Plaintiff Patricia Abraham filed suit against the United States under the Federal Tort Claims Act alleging that two military physicians who were participating in surgical rotations at University Hospital of Jacksonville, a Florida civilian hospital, committed medical malpractice resulting in the death of her husband, Raymond Abraham. The United States moved for summary judgment, asserting that it could not be held liable for acts committed by its employees while they were not under its supervision or control. The district court granted defendant's summary judgment motion and the plaintiff appeals. For the reasons that follow, WE REVERSE.

## I. BACKGROUND

On October 28, 1988, twenty-eight year old Raymond Abraham was shot in the abdomen during a robbery at the grocery store he owned and operated. He was taken to University Hospital of Jacksonville,[1] the area's principal trauma center at about 9:30 p.m. Dr. Chen, a surgical resident, took Abraham's history and performed a peritoneal lavage, which revealed blood in the abdomen, requiring surgery. The surgery was performed shortly before midnight by a trauma team consisting of three physicians: Dr. Frykberg, Chief of General Surgery at University and Abraham's attending physician; Dr. Wilcox, Chief Resident of General Surgery; and Dr. Bolar, an active duty Army physician assigned to a trauma surgery rotation at University Hospital as part of his residency

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. The hospital is now known as University Medical Center.

training. Dr. Bolar wrote the orders for post-operative care.

At 2:00 a.m., Abraham was transferred to the Surgical Intensive Care Unit (SICU). Dr. Leoni, an active duty Navy physician who was assigned to a rotation in SICU as part of his residency training, was on duty in SICU at that time. Dr. Bolar's post-operative instructions for Dr. Leoni indicated that Abraham should be monitored closely because of the potential for bleeding. At 3:15 a.m., Abraham's blood pressure dropped and his heart rate increased. After Dr. Leoni unsuccessfully tried to catheterize the patient, assistance was requested and Dr. Chen arrived. Dr. Chen contacted Dr. Bolar by telephone. Bolar instructed Chen to abandon the catheter attempts and instead to maintain intravenous fluids. Dr. Chen left the SICU between 4 and 5 a.m. At 7:30 a.m., Dr. Leoni again requested assistance and Dr. Wilcox responded. Wilcox performed an open heart cardiac massage on Abraham. However, at 8:15 a.m., Abraham was pronounced dead from a massive heart attack induced by prolonged internal bleeding.

## II. DISCUSSION

Plaintiff alleges that Drs. Bolar and Leoni were negligent in the care provided to her husband and that this was the cause of his death. Under 10 U.S.C. § 1089, plaintiff is prohibited from suing the physicians personally if she has a remedy under the Federal Tort Claims Act (FTCA). The FTCA provides that:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances....

28 U.S.C.A. § 2674.

The jurisdictional provision, 28 U.S.C. § 1346, clarifies the application of this provision in employee negligence actions. Section 1346 states that the United States may be sued for the negligent acts or omissions of its employees resulting in personal injury or death "if a private person would be liable to the claimant in accordance with the law of the place where the act or omis-

sion occurred." Therefore, the issue here is whether a private employer would be liable under Florida law for the physicians' alleged negligence.

The Florida Supreme Court states the principles of employer liability very broadly:

An employer is vicariously liable for *compensatory* damages resulting from the negligent acts of employees committed within the scope of their employment even if the employer is without fault. This is based upon the long-recognized public policy that victims injured by the negligence of employees acting within the scope of their employment should be compensated even though it means placing vicarious liability on an innocent employer.

*Mercury Motors Express, Inc. v. Smith*, 393 So.2d 545, 549 (Fla.1981) (emphasis in original).

It is undisputed that the physicians were acting within the scope of their employment. Consequently, under Florida law, the government would ordinarily be liable if the physicians were negligent. However, the government argues, and the district court held, that the government was relieved of liability in this case because the military doctors were the "borrowed servants" of the hospital.

We disagree. The Florida Supreme Court has stated that an employer may be relieved of its respondeat superior liability through the borrowed servant doctrine only if another employer assumes complete control of the servant. In *Postal Telegraph & Cable Co. v. Doyle*, 123 Fla. 695, 167 So. 358 (1936), the supreme court rejected a defendant-employer's argument that it was not responsible for its employee's negligence because the employee had been loaned to a third party. The court stated:

It is competent for a principal to loan or farm out his servant to a third party, and if such third party has complete dominion over the servant, and directs his conduct at all times, he will be held responsible for his derelictions even though the principal is paying his salary; but this rule

does not hold good if the principal in any way withholds control over him.

*Id.* 167 So. at 360.

Similarly, in *Parmerter v. Osteopathic General Hospital*, 196 So.2d 505 (Fla.App. 1967), the Court of Appeal of Florida, Third District, held that a hospital was not relieved of liability for the negligence of an intern although the hospital asserted that at the time of the alleged negligent act the intern was acting at the directions of a private physician. The court stated that the employer had not met its burden of showing that the employee was not, as a matter of law, acting as the hospital's agent at the time of the alleged negligence. Likewise, the Restatement of Agency, cited with approval in the *Parmerter* case, states that when a servant is loaned to another, "there is an inference that he remains in his general employment, so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it." Restatement (Second) of Agency § 227 and comment b (1958).

On the record before this court, it is clear that a material question of fact remains for trial. There is evidence that Dr. Bolar and Dr. Leoni exercised a great deal of autonomy in their work at University Hospital, both generally and with respect to the care of Abraham. Dr. Bolar wrote Abraham's post-operative orders. He also, without orders from or consultation with a University employed physician, gave instructions on Abraham's care when Leoni was unable to catheterize the patient. Furthermore, Dr. Leoni was apparently the only doctor present in SICU to care for Abraham unless Leoni or the nursing staff sought assistance. Also, Dr. Leoni testified that he was not under the direction or supervision of any doctor, military or civilian, and that he was not bound by the orders given to him if he deemed other treatment necessary. From this evidence, the factfinder could conclude that the hospital did not exercise "complete dominion" over the military physicians or "direct their conduct at all times" so as to relieve their general employer, the United States, of its liability for their negligent acts or omissions under the *Postal Telegraph* standard. Stated another way, the factfinder could conclude that the United States did not overcome the presumption that a borrowed servant remains in his general employ. Consequently, the government's motion for summary judgment should have been denied.

The government argues in its defense that the hospital should be liable for the military physicians' actions because a hospital is charged with the ultimate responsibility for delivering adequate medical care to its patients. We need not address whether the hospital could be held liable in a separate suit for the alleged negligence of the military physicians, because such a finding would not be inconsistent with this opinion. We hold only that the United States was not conclusively relieved of liability for the negligent acts or omissions of its servants by their service to University Hospital. This does not preclude a finding that the hospital is also liable for the physicians' actions if they were indeed negligent. As the Restatement makes clear, a single act may be done with the purpose of benefiting two masters and both may then be liable for the servant's negligence. *See* Restatement (Second) of Agency § 226 and comment a (1958); 57 C.J.S. Master and Servant § 566, at 290, text accompanying notes 32 & 33 (1948) (lender and borrower may both be liable if servant's work is of mutual interest so that service to one does not involve abandonment of service to the other). Therefore, the hospital's culpability is not relevant to our conclusion that the government was not entitled to summary judgment.

## III. CONCLUSION

For the reasons stated above, the order of the district court granting the defendant's motion for summary judgment is REVERSED, and this case is REMANDED for further proceedings not inconsistent with this opinion.