**Robert ALDRIDGE, Plaintiff,**

**v.**

**HARTFORD HOSPITAL, William D. Jones, III, M.D. and Lieutenant Commander Christopher L. Olch, M.D., Defendants.**

**Civil No. 3:96–01409 (DJS).**

United States District Court,
D. Connecticut.

Nov. 28, 1996.

Peter J. Boorman, Nassau, Borowy & Griffith, Newington, CT, for Robert Aldridge.

Thomas O. Anderson, O'Brien, Tanski, Tanzer & Young, Hartford, CT, for Hartford Hospital.

Herbert J. Shepardson, Cooney, Scully & Dowling, Hartford, CT, for William D. Jones, III.

Thomas V. Daily, U.S. Attorney's Office, Hartford, CT, for Christopher L. Olch.

## MEMORANDUM OPINION AND ORDER

SQUATRITO, District Judge.

Pending before the court are the following motions: (1) the defendant, Lieutenant Commander Christopher L. Olch, M.D.'s motion to substitute the United States Government as the proper defendant pursuant to 28 U.S.C. § 2679; (2) Dr. Olch's motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure; and (3) the plaintiff's motion to remand this action to Connecticut state court pursuant to 28 U.S.C. § 1447(c).

For the reasons set forth below, the defendant's motion for substitution is granted and the United States is substituted for Dr. Olch as the proper defendant pursuant to 28 U.S.C. § 2679(d). The court further holds that the United States (substituted for Dr. Olch), is dismissed from the action because the plaintiff failed to exhaust administrative remedies, pursuant to 28 U.S.C. § 2675(a).

Finally, for the reasons set forth below, the court holds that upon the United States being dismissed, this court no longer has jurisdiction over the claims remaining against the defendants Hartford Hospital and William D. Jones, III, M.D. Therefore, the plaintiff's motion to remand is granted with respect to the claims Superior Court.

## I. BACKGROUND

### A. Facts

For the purposes of these motions, the following facts are assumed to be true. On or about December 14, 1992, the plaintiff entered Hartford Hospital for treatment of an injury sustained to his right fifth finger. (Complaint at ¶ 3.) The plaintiff underwent surgery in connection with this injury on the same day. William D. Jones, III, M.D. was the surgeon and Christopher L. Olch, M.D. was the first assistant who performed the surgical procedure and post-surgical care on the plaintiff. (Id. at ¶ 5.)

Dr. Olch, at the time of the surgery, was a Lieutenant Commander in the United States Navy on active duty in the Full Time Outservice residency program under the guidance and direction of the Naval Health Sciences Education and Training Command. Dr. Olch was assigned under Navy orders to the University of Connecticut as a resident in Orthopedic Surgery. (Dr. Olch's Notice of Removal ¶ 3.)

On or about December 15, 1992, the plaintiff telephoned the defendants and complained of significant pain and discomfort in the tip of his finger and was prescribed pain medication by Dr. Olch. (Complaint at ¶ 6.) The plaintiff returned to the Hartford Hospital emergency room on or about December 19, 1992 complaining of increased pain and a cold sensation in the tip of his finger. (Id. at ¶ 8.) On December 22, 1992, the plaintiff returned to Hartford Hospital where another surgical procedure was performed on the finger. (Id. at ¶ 9.) On December 28, 1992, the plaintiff again returned to the emergency room complaining of continuing pain in the finger. (Id. at ¶ 10.) On December 29, 1992, Dr. Jones informed the plaintiff that a portion of his finger might have to be amputated. (Id. at ¶ 11.) Dr. Jones confirmed this diagnosis on January 5, 1993, when the plaintiff returned for a scheduled appointment. (Id. at ¶ 12.) The plaintiff's finger tip was amputated on January 11, 1993. (Id. at ¶ 14.)

### B. Procedural History

The plaintiff filed this complaint against Hartford Hospital, Dr. Jones, and Dr. Olch in

the Connecticut Superior Court, Judicial District of Hartford/New Britain at New Britain on March 10, 1995, alleging negligence and medical malpractice. On June 21, 1996, the United States Assistant Attorney provided a certification stating that, during the time in question, Dr. Olch was acting within the scope of his employment as a Navy Medical Corps Officer. The case was removed to this court on July 26, 1996.

## II. *DISCUSSION*

### A. *Dr. Olch's Motion for Substitution*

#### 1. *Statutory Framework*

There are three federal laws which apply in medical malpractice cases concerning federal employees in private hospitals. *Palmer v. United States*, 93 F.3d 196, 199 (5th Cir. 1996). The first is the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, which provides a remedy for persons injured by government employees "acting within the course and scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The second is the Medical Malpractice Immunity Act (the "Gonzales Act"), which specifically states that when a physician of the armed forces causes injury while acting within the scope of his duties or employment, the sole remedy available to the injured party for the acts of that physician is against the United States Government. 10 U.S.C. § 1089. The third is the Federal Employees Liability Reform Act (the "Westfall Act"), which amended the Federal Tort Claims Act. This act provides that the exclusive remedy for a party injured by a federal employee acting within the scope of employment is the FTCA. 28 U.S.C. § 2679.

■ The determination of whether a federal employee was acting within the scope and course of his employment is determined by the law of the state in which the alleged misconduct occurred. *Palmer*, 93 F.3d at 198 (*citing Garcia v. United States*, 62 F.3d 126, 127 (5th Cir.1995)); *Wood v. United States*, 995 F.2d 1122, 1125 (1st Cir.1993).

It follows that, if Dr. Olch is found to have been acting within the scope of his federal employment, the United States must be substituted for Dr. Olch as the proper defendant.

#### 2. *Scope of Employment*

Dr. Olch moves to substitute the United States as the proper party pursuant to the Westfall Act:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action ... commenced upon such claim ... shall be deemed an action against the United states ... and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1); *Ward v. Gordon*, 999 F.2d 1399, 1402 (9th Cir.1993).

■ Dr. Olch argues that certification of this fact by the Attorney General is sufficient alone to warrant substitution, relying on *Lewis v. Schacher*, 1986 WL 10803 (E.D.Pa.). (Dr. Olch's Mem. In Supp. Mot. For Sub. at 4.) However, most courts have not interpreted certification by the Attorney General to be conclusive, even though the language of the statute seems contrary. *Schrob v. Catterson*, 967 F.2d 929 (3d Cir.1992); *Nasuti v. Scannell*, 792 F.2d 264, 266 n. 3 (1st Cir. 1986); *Costa v. United States*, 845 F.Supp. 64, 67 (D.R.I.1994).

■ Since the alleged tort occurred in Connecticut, we now turn to Connecticut agency law to determine whether Dr. Olch was acting within the scope of his federal employment. Under Connecticut law, "[a] servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase 'during the period covered by his employment.'" *A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 209–210, 579 A.2d 69 (1990) (*citing Butler v. Hyperion Theatre Co.*, 100 Conn. 551, 554, 124 A. 220 (1924)). An employee is not acting within the scope of his employment if he has "abandoned" his master's business. *Id.*

The plaintiff argues that Dr. Olch was a "borrowed servant" of Hartford Hospital at the time in question, thus allegedly precluding him from acting within the scope of his federal employment. Under Connecticut law, "the person to whom the services of another's employee are loaned is responsible for the employee's negligent acts only so long as the temporary master actually exercises supervision and control over the servant." *Bria v. St. Joseph's Hospital,* 153 Conn. 626, 630, 220 A.2d 29 (1966). An employee is a borrowed servant if he becomes subject to the direction and control of the party to whom he is lent or hired. *Parsons v. Daly & Sons,* 114 Conn. 143, 149, 158 A. 216 (1932).

The interaction between the various statutes, the one Supreme Court case to interpret them, *United States v. Smith,* 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991), and the "borrowed servant" doctrine, was explained in *Palmer, supra:*

> ... *Smith's* discussion of the interaction between Westfall Act immunity and "exceptions" to liability under the FTCA guides this court in its treatment of the possible, application of "borrowed servant" doctrine in this case. The "borrowed servant" doctrine is not an express "exception" to the FTCA that would prevent the plaintiffs from seeking a remedy against the United States. Instead, because the FTCA allows a plaintiff to recover against the United States only "to the same extent as a private individual in like circumstances," the "borrowed servant" doctrine could conceivably be a limitation on the United State's waiver of sovereign immunity. Because FTCA actions brought pursuant to the Westfall Act are "subject to the limitations and exceptions [of the FTCA]," a federal employee acting within the course and scope of his federal employment may therefore still retain Westfall Act immunity, even when a different state tort liability provision will ultimately prevent the plaintiff from recovering against the United States.

\*    \*    \*    \*    \*    \*

Thus we must now determine whether under Texas state law, the scope of employment inquiry is separable from the control inquiry and the ultimate issue of liability. Under the reasoning of *Smith,* if the two issues are separable, the "borrowed servant" doctrine will not prevent Dr. Graham from being within the "course and scope of his employment." If this is the case, Dr. Graham is entitled to Westfall Act immunity, and the United States is the appropriate defendant. On the other hand, if the two issues are not separable, then Dr. Graham could not have acted within the scope of his federal employment and simultaneously have acted as the borrowed servant of NCH [the hospital]. As such, Dr. Graham would not be entitled to Westfall Act immunity, and was properly re-substituted as defendant.

\*    \*    \*    \*    \*    \*

Although it is true that we are required to apply Texas respondeat superior law to Dr. Graham's scope of employment, we are not required to apply the entire body of respondeat superior law, but only that portion of the law that resolves the scope of employment issue. Any related respondeat superior doctrine are nothing more than the type of defenses available to private individuals, and irrelevant to a Westfall Act scope of employment certification.

*Palmer,* 93 F.3d at 201–202 (footnotes omitted).

The plaintiff makes no allegations that Dr. Olch was not acting in furtherance of the United States' interests. The fact that he was also working for the benefit of Hartford Hospital does not preclude such a finding: "[I]f a servant's work is of mutual interest—service to one does not involve abandonment of service to the other ..." *Abraham v. United States,* 932 F.2d 900, 903 (11th Cir.1991) (*citing* 57 C.J.S. Master and Servant § 566 at 290, n. 32 & 33 (1948)). Dr. Olch served Hartford Hospital as a resident in Orthopedic Surgery from July 1990 until July 1995; however, he was under military orders and compensated by the Navy at all times during this period.[1] (Dr. Olch's Mem. in Opposition Exhibits 1 & 2).

1. "[Dr. Olch], while engaged in training or per-    forming services in connection with this MOU

Dr. Olch may well have been a borrowed servant of Hartford Hospital while participating in his residency program, but Connecticut law is silent as to whether this status mandates a finding that he was acting outside the scope of his lender's employment. Accordingly, this court finds, based upon fundamental principles of Connecticut agency law, that regardless of whether Dr. Olch was a borrowed servant of Hartford Hospital, he was still acting within the scope of his federal employment.

This is consistent with cases from other jurisdictions. For example, in *Ward, supra,* a case cited by the plaintiff, the facts were substantially similar to this case. A military physician, Dr. Gordon, was sued for malpractice for acts stemming from his residency training at a private hospital. The Ninth Circuit upheld the district court's finding that Dr. Gordon was a borrowed servant under Washington law. *Ward,* 999 F.2d at 1403. The court went on to state that such a finding did not necessarily mean he acted outside the scope of his government employment. *Id.* at 1403. In fact, the court held that Dr. Gordon's participation in the residency training at a private hospital was in furtherance of the Government's interests. *Id.* at 1404. This was also the conclusion of the Fifth Circuit in *Palmer.*

The court finds that Dr. Olch was acting within the scope of his federal employment at the time of the alleged negligence and, therefore, the United States Government must be substituted as the proper party.

### B. *Dr. Olch's Motion to Dismiss*

██ The FTCA provides the exclusive remedy available to the plaintiff as against the United States Government for the alleged wrongdoing by Dr. Olch. It provides, in relevant part:

> the remedy against the United States provided by sections 1346(b) and 2672 of this title for ... personal injury ... resulting from the negligent or wrongful act or

[Memorandum of Understanding], does so within the course and scope of his ... employment and duties as an officer of the U.S. Naval Medical Department under the authority of lawful military orders. Accordingly, as an employee of the

omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding by reason of the same subject matter ...

28 U.S.C. § 2679. *See also* 10 U.S.C. § 1089. The FTCA further requires a plaintiff to exhaust his administrative remedies as a prerequisite to bringing suit:

> An action shall not be instituted upon a claim against the United States for money damages for injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified mail.

28 U.S.C. § 2675(a). When a plaintiff has failed to file an action with the appropriate federal agency prior to instituting suit, the suit must be dismissed. *Henderson v. United States,* 785 F.2d 121, 123–125 (4th Cir. 1986); *Jackson v. United States,* 730 F.2d 808, 809–810 (D.C.Cir.1984) (*per curiam*); *Holloman v. Watt,* 708 F.2d 1399, 1402 (9th Cir.1983); *Rauccio v. Frank,* 750 F.Supp. 566, 574 (D.Conn.1990).

The plaintiff did not file a claim with the United States Navy for his injuries. Since the FTCA is the plaintiff's exclusive remedy for Dr. Olch's alleged wrongdoing, and because the FTCA requires exhaustion of administrative remedies prior to instituting suit, the plaintiff's suit against the United States (substituted for Dr. Olch) must be dismissed.

### C. *The Plaintiff's Motion to Remand*

The plaintiff moves to remand this case to Connecticut Superior Court pursuant to 28 U.S.C. § 1447(c), allowing him to pursue his complaint against all named defendants, claiming that this court lacks subject matter jurisdiction to hear the case.

U.S. Navy, [Dr. Olch] shall receive all renumeration from the U.S. Navy." (Memorandum of Understanding Between the Department of the Navy and the University of Connecticut Health Center.)

As discussed above, this court has determined Dr. Olch was a federal employee acting within the scope of his employment at the time of the alleged negligence. Dr. Olch properly moved to substitute the United States as the party defendant pursuant to 10 U.S.C. § 1089, and this motion is granted. Remaining, therefore, as defendants are Hartford Hospital and Dr. Jones.

Since the United States is dismissed as a defendant, the statute which conferred jurisdiction upon this court, 28 U.S.C. § 1346, is no longer applicable. The remaining parties are all citizens of Connecticut; therefore, diversity is lacking. 28 U.S.C. § 1332. The complaint must be remanded to Connecticut Superior Court.

### III.  CONCLUSION

For the reasons stated above, Dr. Olch' s motion for substitution (document no. 4) is **GRANTED.** Dr. Olch's motion to dismiss (document no. 5) is **GRANTED.** Robert Aldridge's motion to remand (document no. 10) is **GRANTED** with respect to the claims against the remaining parties.

This matter is **REMANDED** to the Connecticut Superior Court for the District of Hartford/New Britain.

**It is so ordered.**