108 N.J. Super. 209 (1970)
260 A.2d 526
GEORGE STUMPER, SR. AND VIRGINIA STUMPER, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
VICTOR KIMEL, DEFENDANT-RESPONDENT, AND BRUNO HENNIG, JULIUS GUSTAV MEDEK, MIGUEL MOYA, AND THE BETH ISRAEL HOSPITAL ASSOCIATION OF PASSAIC, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1969.
Decided January 8, 1970.
*210 Before Judges SULLIVAN, CARTON and HALPERN.
Mr. George B. Gelman argued the cause for appellants (Messrs. Calissi, Gelman, Cuccio and Klinger, attorneys; Mr. Peter S. Levitov on the brief).
Mr. Raymond M. Tierney, Jr. argued the cause for respondent (Messrs. Shanley & Fisher, attorneys; Mr. Philip D. Saxer on the brief).
The opinion of the court was delivered by HALPERN, J.A.D.
Plaintiffs appeal from a judgment entered on a jury verdict in favor of defendant Dr. Victor Kimel. This medical malpractice suit was originally instituted against Beth Israel Hospital of Passaic, two nurses, Dr. Bruno Hennig, a resident physician employed by the hospital, *211 and Kimel. Shortly before summations plaintiffs settled their claims with all defendants, except Kimel, for the sum of $25,000.
A brief summary of the facts will point up the issues involved. On January 29, 1965 Kimel, a specialist in thoracic and cardio-vascular surgery and general surgery, operated on plaintiff George Stumper, Sr., and resected an aortic aneurysm. On the seventh post-operative day plaintiff developed an intestinal obstruction. To relieve this condition Kimel inserted a Miller-Abbott tube (M-A tube). The purpose and function of an M-A tube is not in dispute and is described in defendant's brief thusly:
A Miller-Abbott tube is a device which is inserted through the patient's nostril and passes through the esophagus into the stomach and ultimately into the small intestine. The purpose of the device is to decompress the small intestine by extracting the gastric contents.
The device consists of a tubular rubber hose which surrounds two lumen. One lumen is used for suction; the other communicates with a balloon. The lumen do not communicate with each other. The tube has a forked metal tip; one fork is marked `suction', the other `balloon'. The markings are engraved in the metal. The tips communicate with their respective lumen.
The suction lumen communicates with the interior gastric system through holes at the end of the tube. It is through this lumen that the gastric contents may be extracted.
The balloon lumen does not communicate with the interior gastric system, it ends with a balloon which is attached to the end of the M-A tube. The balloon is deflated when the tube is inserted. However, after it is inserted, water, air or mercury may be placed in the balloon. The tube is carried into the small intestine by the peristaltic action of the stomach. The balloon provides the bulk and weight on which these contractions may work.
Because the intestines or stomach may contact the suction holes, it is necessary to irrigate the tube with fluid in order to maintain suction. This is accomplished by introducing a saline solution through the suction lumen.
After Kimel had inserted the M-A tube on February 6, 1965 he entered orders on the hospital chart for the nursing staff to irrigate and advance it periodically. The hospital records indicate these orders were carried out. Plaintiffs do not dispute the fact that leaving such orders is the accepted *212 standard hospital procedure, since the nursing staff are hired, trained and qualified to perform this task.
On February 8, 1965 word reached Kimel that the wrong lumen of the M-A tube may have been irrigated. Kimel testified that he checked this report by personally examining the M-A tube and aspirating the balloon lumen, but found no fluid therein. He caused x-rays to be taken and when they appeared to be satisfactory he ordered the M-A tube removed by a resident physician. Dr. Hennig, one of the resident physicians employed by the hospital, attempted to remove it (not in Kimel's presence) but was unable to do so. Hennig testified that in his opinion someone had previously tried to remove it. Kimel verified the fact that it could not be removed, and ultimately determined that plaintiff had a perforation of the esophagus and a partially collapsed lung. Presumably these injuries were sustained when attempts were made to remove the M-A tube. Kimel performed a thoracotomy operation to repair the perforation and to remove the M-A tube. When the balloon was removed clear fluid came out of it which indicated that someone had improperly irrigated the M-A tube, preventing its removal in the normal manner and resulting in plaintiff's injuries.
There was a conflict in the testimony as to whether Hennig or Kimel first attempted to remove the M-A tube. Plaintiff testified it was Kimel, and this was inferentially supported by Hennig, who testified someone had previously tried to remove it. Kimel testified his attempts were made only after Hennig's failed.
Defendant and his medical experts testified that Kimel's post-operative procedures in treating plaintiff conformed in all respects with accepted medical and hospital standards. Plaintiffs' medical expert testified that there would be a deviation from such standards if (a) Kimel knew there was water in the balloon and ordered the M-A tube's removal without imparting this fact to the resident, and (b) Kimel knew there was water in the balloon and failed to eliminate the water before trying to remove the M-A tube.
*213 The jury having resolved all issues in Kimel's favor, plaintiffs now seek a reversal and new trial based on alleged legal error. They contend that defendant, as a surgeon administering post-operative care, should be held vicariously liable for the negligence of a hospital-employed resident physician carrying out his orders requiring the expertise of a doctor. This argument is based on the so-called "borrowed servant" rule, which plaintiffs contend made Hennig the employee of Kimel while carrying out Kimel's orders. We disagree and hold that a surgeon rendering post-operative care to a patient is not liable for the negligence of a hospital-employed resident physician, when the orders given relate to procedures which are not potentially dangerous to the patient and fall within the ambit of his training and qualifications, and is the accepted medical and hospital standard of practice. Barrette v. Hight, 253 Mass. 268, 230 N.E.2d 808 (Mass. Sup. Jud. Ct. 1967). See also Morris v. Winsbury-White, 4 All Eng. 494 (1937).
Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses, interns, as well as administrative and manual workers, and they charge patients for medical care * * *. The Standards for Hospital Accreditation, the state licensing regulations and the defendant's by-laws demonstrate that the medical profession and other responsible authorities regard it as both desirable and feasible that a hospital assume certain responsibilities for the care of the patient. [Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 211 N.E.2d 253, 257, 14 A.L.R.3d 860 (1965), cert. den. 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966)]
As medicine is practiced today it would be unrealistic and unreasonable to adopt any other view. There are exceptions to this rule; as examples only, if the patient proves the surgeon was negligent in giving his instructions, or he knew the resident was not qualified to perform the task assigned, or he was present and could have avoided the injury, or that some special contract arrangement existed with the patient or the resident which would require a different result. Hohenthal *214 v. Smith, 72 App. D.C. 343, 114 F.2d 494 (1940); Bria v. St. Joseph's Hospital, 153 Conn. 626, 220 A.2d 29 (1966).
The trial judge, being of the opinion that a fact question was presented on whether Kimel's order to remove the M-A tube was potentially dangerous to plaintiff, properly charged the jury that if they found that the order given by Kimel was "such that the potential dangers and risks attending it are unduly great with respect to the patient," then such would be a nondelegable duty, and Kimel would be responsible for Hennig's negligence. The jury, by its verdict, found such order to be delegable and in accordance with accepted medical and hospital standards, and absolved Kimel from responsibility.
Plaintiffs, in seeking to hold Kimel liable, advance the same "borrowed servant" rule argument with respect to the admitted negligence of the hospital and the nurses in irrigating the M-A tube. What we have said with respect to Hennig applies with equal force to the hospital and the nurses. The proofs in the record are undisputed that the orders Kimel left for the nursing staff met the accepted medical and hospital standards in such situations. Therefore, the court in its charge properly instructed the jury that Kimel was not responsible for the negligence of the hospital and the nurses. See Martin v. Perth Amboy General Hospital, 104 N.J. Super. 335 (App. Div. 1969), where this rule is stated but the surgeon was held liable on other grounds. See also Moore v. Guthrie Hospital, Inc., 403 F.2d 366 (4 Cir. 1968), where a surgeon was held not liable for negligence of a staff nurse who injected a patient intravenously instead of intramuscularly.
Finally, plaintiffs charge prejudicial error, which we are asked to recognize as plain error, because defense counsel in summation quoted from the poem "The Cremation of Sam McGee." We have considered this argument in the light of the entire record and fail to find plain error affecting the substantial rights of the plaintiffs.
Affirmed.