# CIRCUIT COURT OF THE CITY OF WINCHESTER

Robert F. Alger

v.

William H. Pifer et al.

### Case No. (Law) 86-L-84

## By JUDGE HENRY H. WHITING

### March 30, 1987

This motion for judgment seeks to subject a doctor, W. H. Pifer, who had performed an operation upon a patient to liability for the negligence of one of the nurses in the hospital, who *after* the operation failed to advise another doctor, H. E. Poling, of the patient's allergy to a particular medicine noted on the hospital chart. This is on the theory that "the prescription of pain medication immediately after the operation is part of the care associated with the operation." (Plaintiff's Memorandum, page 3.)

I have carefully read the memoranda filed by counsel and all the cases cited therein. In my opinion the demurrer filed by Dr. Pifer should be sustained.

There has been no allegation that the nurse who gave the information to Dr. Poling was either an employee of Dr. Pifer's or was controlled by Dr. Pifer. Contrary to the plaintiff's statement on the bottom of the second unnumbered page of his memorandum, *Naccash v. Burger*, 223 Va. 406 (1982), did not "clearly establish [that] the master-servant relationship exists between doctors and his servants [nurses employed by the hospital and *not* the doctor] other than during the operation." Moreover, plaintiff is in error in stating on the succeeding

page that "it was unclear as to whether Dr. Naccash selected her as his servant or had the power to dismiss her." [*Naccash*] based its imposition of the doctor's liability by reason of the nurse's negligence, upon the finding that Dr. Naccash volunteered to be willing "to oversee the operation of the laboratory and supervise [the nurse in her work]; under the arrangement 'the hospital would have nothing to do with hiring, firing, making decisions or anything'." *Id.*, at 417-418. Dr. Naccash admitted in pre-trial depositions that he was the acting head of the laboratory and the nurse testified she reported directly to him, had frequent communication with him and consulted with him most of the time about the laboratory's problems and policies. In my opinion *Naccash* cannot be used to support the assertion made by the plaintiff, and in the absence of some allegation of actual control of the nurse and/or power to discharge by Dr. Pifer the pleading is insufficient.

The Court does not decide the issue of proximate cause in the demurrer at this time. No authority is cited in support of the contention and the Court would have to see some kind of authority before it would rule proximate cause out as a matter of law.

### April 26, 1987

Upon re-reading my letter of March 30, 1987, I realized that I did not completely address the demurrers filed. I dealt with Dr. Pifer's alleged vicarious liability because of the claimed negligence on the part of the nurse, but I did not dispose of his asserted liability because of the contended negligence of Dr. Poling.

Dr. Poling was the anesthesiologist who participated in the operation and some time later was averred to have negligently prescribed a pain-killing drug the plaintiff was allergic to. The basis of Dr. Pifer's asserted liability for this act is his responsibility "of insuring that his patient receive proper medical treatment [by] supervising the prescription of pain medication after the operation."

We need not deal with the "captain of the ship" doctrine since the injury occurred after the operation. The secondary authorities are generally agreed that an operating surgeon is not liable for the negligence of another doctor

who is acting independently. Vol. 5A Frumer and Friedman, Personal Injury, Physicians and Surgeons and Related Professions, § 1.05, page 131, *et seq.*; 9 Shepard's Cause of Action 1, § 21; Sullivan and Gee, Vicarious Liability of Physician for Neligence of Another, 38 Am. Jur. Proof of Facts 2d 445 (1984); Kramer & Kramer, Medical Malpractice (5th ed.) 34-36; Annotation 85 A.L.R.2d 889, Liability of One physician or Surgeon for Malpractice of Another, Section 10, page 905, *et seq.*; Louisell & Williams, Medical Malpractice §§ 16.02(3), 16.03-16.07 (1960).

There can be little doubt that Dr. Pifer would not have been liable for the activity of the anesthesiologist during the operation; the issue here is whether he is liable for the alleged negligence of the anesthesiologist, who was then acting as a physician and not an anesthesiologist in prescribing a post-operative pain-killing drug. Neither counsel have cited any case dealing with the alleged negligence of an operating surgeon for the later misprescription of a drug by an independent doctor, and the Court's independent research has disclosed no such case. However, other cases do provide an analogy and rationale for a ruling in this case.

In *Adams v. Liedholdt*, 563 P.2d 15, 19 (Col. App. 1976), a staff physician was held "not liable for failure of the hospital employees to execute reasonable post-operative procedures for the treatment of his patients, and he may assume that the hospital's employees are competent to follow reasonable orders unless he has knowledge to the contrary." (another doctor wrapped a leg too tightly following hip surgery, resulting in a foot drop); *see also Galloway v. Ioppolo*, 464 So. 2d 386, 392 (La. App. 1985) (operating doctor was held not liable for the negligence of nurses employed by the hospital in failing to discover post-operative bleeding); *Shull v. Schwartz*, 73 A.2d 402 (Pa. 1950) (operating surgeon held not liable for the later negligence of a hospital intern who was directed by him to remove the stitches from the operation and negligently failed to remove all of them). In *Hohenthal v. Smith*, 114 F.2d 464 (D.C. Cir. 1940), the operating room surgeon was held not liable for the negligence of an intern treating the patient just after the operation. As the Court said:

Where employees of the hospital are negligent in carrying out the surgeon's instructions as to treatment after the operation, the overwhelming weight of authority holds that the surgeon is not liable in the absence of a showing that he was negligent in giving instructions or selecting the persons to carry them out, that he was present and could have avoided the injury by exercising due care or that his special contract relative to the negligent employee was such as to make the doctrine of *respondeat superior* applicable. . . . It follows that [the operating surgeon's] giving instructions to the intern to administer a hypodermoclysis did not alter the master-servant relationship between the hospital and the intern and did not create an employment contract or relation between the defendant and the intern. The fact that the defendant's instructions related to a "medical measure" rather than to "usual nursing measures" cannot in itself create an employment relation. It is not suggested that defendant was negligent in giving his instructions, or in assigning the duty to the intern. *Id.* at 496-497.

*Cf. Bria v. St. Joseph's Hospital*, 220 A.2d. 29 (Conn. 1966) (surgeon held not liable for negligence of hospital staff nurse in administering hypodermic injections after an operation); *Honeywell v. Rogers*, 251 F. Supp. 841 (W.D. Pa. 1966) (a similar holding as to negligent injection by floor nurses during a hospital treatment not involving surgery); *Stumper v. Kimmel*, 260 A.2d 526, 528 (N.J. Sup. 1970) (operating surgeon held not liable for the negligence of a resident physician of the hospital who injured a patient in removing a gastral tubing inserted by the operating surgeon which had to be removed and cleaned periodically):

A surgeon rendering post-operative care to a patient is not liable for the negligence of a hospital-employed resident physician, when the orders given relate to procedures which are not potentially dangerous to the patient

and fall within the ambit of his training and qualifications and is the accepted medical standard of practice. . . [except when] the patient proves the surgeon was negligent in giving his instructions, or he knew the resident was not qualified to perform the tasks assigned or he was present and could have avoided the injury, or that some special contract arrangement existed with the patient or the resident which would require a different result. *Id*. at 528.

The pleading does not allege that Dr. Pifer negligently failed to discover the allergy or to see that the allergy was noted on the chart and that is not being ruled upon in this opinion. The Court notes the case of *Woodson v. Juey*, 261 P.2d 199, 204 (Okla. 1953), where the operating surgeon was held not liable for the negligence of an anesthetist who administered a spinal block which the surgeon agreed with the patient he would not receive in the operation. The surgeon noted the patient's request and the instruction on the chart and assumed the anesthetist would read it and comply but apparently the anesthetist did not do so and administered the spinal block prior to the surgeon's entry into the operating room. If Dr. Pifer had seen that the allergy was noted on the chart, that would have discharged that duty under *Woodson* and he would have been entitled to rely upon the second doctor's duty of care to review the chart prior to prescribing drugs. If no notation was made on the chart and Dr. Pifer was advised of the allergy, a different issue may be presented. This Judge does not rule on that issue, leaving it to the next Judge should an appropriate pleading be filed raising that issue. The Court does, however, refer to the case of *Reder v. Hanson*, 338 F.2d 244 (8th Cir. 1964), which held that a doctor who erroneously treated the wrong leg of a patient was not liable for the subsequent negligence of another doctor who continued that erroneous treatment because the second doctor had the same information giving notice of the erroneous diagnosis as the first doctor did. Reading these cases together it may be that where both physicians act independently and have access to the same information, neither should be responsible for the damages attributable to the other's failure to either heed the information disclosed on the chart or

to elicit information which should have been elicited and was lacking on the chart.

The Court sustains the demurrer insofar as the amended motion for judgment seeks to hold Dr. Pifer liable for the negligence of Dr. Poling.