[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Susan M. Haynes, Administratrix of the Estate of Barbara S. Freeman, deceased, filed a four count amended complaint[1] on October 23, 1989, against the defendant Yale-New Haven Hospital ("Hospital") and the defendant Dr. Charles F. McKhann ("McKhann"). On May 14, 1986, at or about noon, the plaintiff's decedent was injured in an auto accident caused by Allen G. Perrier ("Perrier") and at or about 12:40 p.m. was admitted into the Hospital's emergency room where she was treated by McKhann, among others. The plaintiff alleges that at 2:40 p.m. the defendants moved the decedent to an operating room and that she died at 3:40 p.m. during an exploratory laparotomy. The first count of the complaint alleges that the negligence of both the defendant Yale-New Haven Hospital and the defendant McKhann were the proximate causes of the death of Barbara Freeman. CT Page 6651
The second count alleges that the decedent was an employee of the United States Postal Service as a rural letter carrier and that the auto accident occurred during the course of and in the scope of her employment. The second count alleges that the defendant Hospital made claim upon and received from the Office of Workers' Compensation Programs[2] ("OWCP") the sum of $6128.13 for services rendered to the plaintiff. The second count further alleges that the Hospital did not and does not have the right to the $6128.13 and must pay the plaintiff this amount.
The third count alleges that there was an implied contract between the plaintiff and the defendant Hospital and that the Hospital breached this implied contract through its negligence and carelessness. The third count alleges that in providing hospital, surgical and medical services, the Hospital covenanted and promised to meet the legal requirements and standards for professional performance of these services and that the Hospital failed to meet these requirements and standards. The third count alleges that the Hospital covenanted and promised to render these services in compliance with legally applicable standards of good faith and fair dealing and that the Hospital did not do so. The third count alleges that "[i]n addition to the sum of $6128.13 paid by OWCP to defendant Hospital upon said Hospital's claim, OWCP paid the sum of $222.80 for emergency and ambulance services rendered to BARBARA FREEMAN" and that the "defendants are liable to the plaintiff for the sums paid by OWCP in the total amount of $6350.93."
The fourth count alleges that "[i]n order best to qualify to treat such emergency and trauma patients and to draw and receive them, defendant Hospital has sought classification and holds and held itself out as a major trauma center" but "did not duly meet the standards of such a major trauma center." The fourth count alleges that the Hospital maintained deficiencies in its emergency and trauma facilities and services yet sought to remain classified as, and continued to hold itself out as, a major trauma center. The fourth count alleges that doing so violated the Connecticut Unfair Trade Practices Act, ("CUTPA") located at General Statutes § 42-110b et seq.
The plaintiff recovered $20,000 from Perrier under his insurance policy. The plaintiff and the decedent's insurance company proceeded to arbitration to determine the decedent's benefits under her $900,000 underinsured motorist policy. The panel determined the damages to be $650,000 and the plaintiff CT Page 6652 recovered $630,000.
In their January 31, 1995 motion for summary judgment the defendants move on the ground that "none of the counts [contained in the plaintiff's amended complaint] raise [sic] a viable claim upon which relief could be granted to the plaintiff." A memorandum in support filed on January 31, 1995, and another from the Hospital dated February 16, 1995, make supporting arguments. The plaintiff counters with two memoranda in opposition, one dated January 24, 1995, and the other dated February 3, 1995.
Count 1: Negligence
The defendants move for summary judgment on the ground that the plaintiff has already received just compensation for the claimed harm by virtue of the arbitration award. The defendants further argue that the plaintiff cannot recover more than once for the same injury, is bound by the arbitration award as to the "measure of damages" in the case, and may not "split her claim" in order to bring a new action for special damages. The plaintiff counters that this recovery was not payment "by or on behalf of a joint tortfeasor" and that only the $20,000 of insurance money received from Perrier should be deducted from a recovery from the defendants.
"A simple and time-honored maxim [states] that `[a] plaintiff may be compensated only once for his just damages for the same injury.'" Gionfriddo v. Gartenhaus Cafe, 211 Conn. 67, 71,557 A.2d 540 (1989). Where the same cause of action operates against all defendants, the plaintiff can only collect one satisfaction. Id., 74-75. Satisfaction obtained against one defendant reduces but does not preclude recovery against another defendant when the judgments obtained are for different injuries. (Emphasis added.) Id., 74. "[W]hen a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforcible [sic] claim against any other
obligor who is responsible for the same loss." (Emphasis added; quotation marks omitted.) Gionfriddo v. Gartenhaus Cafe, supra,211 Conn. 72, n. 5, quoting Restatement (Second) of judgments 50, commented. This is true if it is "shown that the injured party has received a full recovery." Hammond v. City of Waterbury,219 Conn. 569, 577, 594 A.2d 939 (1991).
"The satisfaction of the arbitration award constitutes a `satisfaction of a judgment in an action in which the measure of CT Page 6653 the plaintiff['s] loss was actually litigated.'" Neils v. Red DogSaloon Care, Inc., 7 Conn. L. Rptr. 121, 123 (July 27, 1992, Higgins, J.) (offering a statement in quotation marks without a citation). "[A] decision of an administrative board, acting in a duly authorized judicial capacity, is a prior decision within the rule of res judicata. . . . [Res judicata also applies] to the award of an arbitration panel in bar of subsequent litigation on the same claim." (Citations omitted.) Corey v. Avco-Lycoming Division,163 Conn. 309, 318, 307 A.2d 155 (1972); see Hunt v. Town of Easton,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 25 98 31 (August 16, 1991, Katz, J.). "Arbitration awards are accorded the benefits of the doctrine of res judicata. However, unless an arbitration decision is an award, it is not a final judgment, and is not entitled to collateral estoppel." (Citations omitted.) Bingman v. New Milford Board of Education,
Superior Court, judicial district of Litchfield, Docket No. 56899 (October 26, 1992, Pickett, J.).
The decedent suffered a single injury — death. That the plaintiff may recover only once for the decedent's death. Therefore, the issue becomes whether or not the arbitration award covered the full measure of the decedent's loss.
In regard to the arbitration, the defendants have submitted pages two and three of the transcript of proceedings. (Defendants' Renewed Motion for Summary Judgment, exhibit 3.) In this portion of the proceedings, the plaintiff's lawyer stated that there was a stipulation between the parties, that "the only issue is just damages for her death, the loss of earning capacity, conscious pain and suffering, loss of enjoyment of life's activities" and that a decision by the arbitrators of $900,000 or less would result in a recovery of the amount decided minus $20,000 with a decision of greater than $900,000 resulting in an $880,000 recovery.
All of the plaintiffs damages were addressed in the arbitration hearing. While the plaintiff focuses her analysis on whether or not there has been recovery from a joint tortfeasor, the Court's and the Restatement of Judgment's focus is on the injury and full recovery. Therefore, here there has been actual litigation of the measure of the plaintiff's loss and satisfaction of that award. (See also Restatement (Second) of Torts § 885(3)). The plaintiff may not collect twice for the same harm.
Count 2: OWCP Damages
CT Page 6654
Because an amended complaint has not been filed, the Court is unsure of whether this claim is alive. It will be addressed.
The plaintiff alleged in the complaint that she made the claim for the $6128.13 paid by OWCP to the Hospital "on behalf of and to the use of OWCP." Plaintiff's Amended Complaint, Count 2, ¶ 9. The Hospital argues that the plaintiff does not have standing to maintain an action on behalf of the OWCP.
"[N]o person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he may suffer, either in an individual or a representative capacity." (Internal quotation marks omitted.) Orsi v. Senatore, 31 Conn. App. 400,414, 626 A.2d 750 (1993). The plaintiff did not and will not suffer an injury and thus does not have standing to bring this count. Therefore, the court does not have jurisdiction to hear this count.
Count 3: Breach of Implied Contract
Again, it is unclear whether this count has been withdrawn.
The plaintiff has alleged that the Hospital's negligence, carelessness, and failure to provide care that meets the "legally applicable standards" were a breach of the Hospital's contract to provide care that meets the standard. The plaintiff alleges that the Hospital, but not Dr. McKhann, is liable under her implied contract theory. The defendants argue that the plaintiff's breach of contract claim is invalid in a medical malpractice action in Connecticut.
"[A] promise not expressly made will not be read into a contract unless it arises by necessary implication from the terms of the agreement." Bria v. St. Joseph's Hospital, 153 Conn. 626,631, 220 A.2d 29 (1966). "A contract implied in fact, like an express contract, depends on actual agreement." Therrien v.Safeguard Manufacturing Co., 180 Conn. 91, 94, 429 A.2d 808 (1980).
In Bria, the court held that a plaintiff could not sue a physician successfully for complications arising outside the scope of the subject matter of their express contract. Bria v. St.Joseph's Hospital, supra, 153 Conn. 632.
In Malone, the court held that a plaintiff may not sue a physician for breach of implied warranty and contract absent CT Page 6655 allegations of "a special or express agreement or a failure to effect a promised cure or accomplish a specified result" where the plaintiff alleged that the breach factored in her medical deterioration and her death. Malone v. Caldwell,6 Conn. L. Rptr. 323, 324-25 (April 20, 1992, Wagner, J.); see Lowrey v. Metpath,Inc., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 51 87 88 (November 9, 1993, Hennessey, J.). The court reasoned that merely alleging failure to "meet the requisite standard of care" will not support an action for breach of implied warranty and contract because such an action alleges that a physician "impliedly agreed to meet the requisite standard of care or, in essence impliedly agreed not to commit malpractice."Malone v. Caldwell, supra.
In Jordan, the plaintiff alleged that "his submission to examination was based on an implied contract that the examination would be completed in a manner that would not cause him pain or harm." Jordan v. MacDonald Co., Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 31 14 99 (January 21, 1994, Hodgson, J.). The court found that "when the claimed breach of contract amounts to a claim of departure from the standard of care . . . no separate cause of action may be maintained based on breach of contract." Id.
The plaintiff has not alleged an agreement between the decedent and the Hospital nor "failure to effect a promised cure or . . . specified result" on the part of the Hospital. That the plaintiff's breach of implied contract claim is actually a claim of departure from the standard of care.
Count 4: CUTPA
A motion for summary judgment, instead of the customary motion to strike, may be used to test the legal sufficiency of the complaint. Boucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409,279 A.2d 540 (1971); Meyer v. Valley Forge Insurance Co.,3 Conn. L. Rptr. 456 (April 11, 1991, Maiocco, J.).
The defendant argues that the plaintiff has not alleged an ascertainable loss as required by CUTPA. The Hospital also argues that the plaintiff has no expert testimony to support a CUTPA claim that the Hospital did not meet the standard of a major trauma center — other than for the day the plaintiff was treated. The plaintiff counters that the CUTPA count does allege damages, that the experts already disclosed will testify at trial on the CT Page 6656 necessary issues, and the expert testimony is not required for success on a CUTPA claim.
General Statutes § 42-110b(a) states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Trade and commerce is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services . . . in this state." General Statutes § 42-110a(4).
Regarding recovery under CUTPA, General Statutes § 42-110g(a) provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." (Emphasis added.) To determine whether a practice violates CUTPA, Connecticut has adopted the federal trade commission's cigarette rule and looks at whether the practice (1) "without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness"; (2) is "immoral, unethical, oppressive, or unscrupulous"; or (3) "causes substantial injury to consumers[,] competitors or other businessmen." Associated Investment CompanyLimited Partnership v. Williams Associates IV, 230 Conn. 148, 155,645 A.2d 505 (1994); see Daddona v. Liberty Mobile Homes Sales,Inc., 209 Conn. 243, 254, 550 A.2d 1061 (1988).
"A hospital business falls within CUTPA's definition of `trade' and `commerce' inasmuch as it involves `the distribution of . . . services.'" Lutson v. Bridgeport Hospital, 5 CSCR 694, 695
(August 19, 1990, Jones, J.). "CUTPA does include the provision and sale of medical services." Yale University School of Medicinev. Wurtzel, Superior Court, judicial district of New Haven, Docket No. 27 53 14 (November 9, 1990, Flanagan, J.).
In Lutson, the court stated that it could find a CUTPA violation in a hospital's telling a patient's son that his mother was well when, due to the hospital's negligence, she had fallen.Lutson v. Bridgeport Hospital, supra. In Yale University School ofMedicine, the court held that a hospital's charging for services not rendered could constitute acting "in a deceptive professional context" which would be "within the scope of the CUTPA statute."Wurtzel v. Yale University School of Medicine, supra. CT Page 6657
While a hospital maybe subject to CUTPA, "negligence [i]s not an unfair or deceptive trade practice within the meaning of General Statutes § 42-110b(a)." A-G Foods, Inc. v. Pepperidge Farm, Inc.,216 Conn. 200, 215, 579 A.2d 69 (1990). Merely reciting CUTPA language to describe acts of negligence or to allege that a defendant "impliedly represented" a condition that led to a plaintiff's harm is "insufficient to allege an actionable CUTPA claim." Chernet v.Town of Wilton, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 10 88 40 (September 29, 1990, Cioffi, J.). Such allegations are insufficient under the three prong cigarette rule. See Id. It is also insufficient for a plaintiff to claim "a violation of the act based on representations made to the public, upon which [s]he relied." Walston v. NortheastUtilities, Superior Court, judicial district of New Haven at New Haven, Docket No. 32 74 41 (October 18, 1993, Gordon, J.).
In the present case, the plaintiff alleges that the Hospital violated CUTPA by holding itself out as a major trauma center and by not providing the decedent with care commensurate with the standard required by its classification as a major trauma center. The plaintiff alleges that the deficiencies in the Hospital's facilities and services proximately caused the decedent's death. The plaintiff alleges that the Hospital had such deficient facilities and services while seeking to maintain its classification as a major trauma center and while holding itself out as a major trauma center.
The plaintiff does not allege facts that give rise to a CUTPA claim. The CUTPA allegations are the allegations of negligence recast. See Chernet, supra, and A-G Foods, Inc., supra. Such allegations are insufficient for CUTPA. Also, the plaintiff's claim of loss alleged in the complaint is not an ascertainable loss. See Habets v. Condon, 5 Conn. L. Rptr. No. 2, 137 (10/14/91).
For the reasons stated above, the defendants' motion for summary judgment is granted as to all counts.
Elaine Gordon, Judge