[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, the plaintiff, Wintonbury Associates, pursuant to its April 24, 1996 complaint, seeks a declaration from the Court that it has no duty to pay a broker's commission pursuant to an exclusive listing agreement it entered into with the defendant (First Count) and also seeks damages and attorney's fees pursuant to the Connecticut Unfair Trade Practice Act (CUTPA) (Third Count).[1] In its May 21, 1996, counterclaim, New England Retail Leasing Company (NERL) seeks payment of the commission ($81,096) it claims it is owed pursuant to the exclusive listing agreement, and also seeks damages and attorney's fees pursuant to CUTPA.
Trial was held on January 29, 1997. The witnesses who testified were Robert Beckenstein, manager of the plaintiff, a partnership which owns the Wintonbury Mall in Bloomfield; Mark D'Addabo, president of the defendant; and David Dumeer, an agent with defendant. Various documents were also introduced into evidence, including Plaintiff's Exhibit 2, the CT Page 1837 exclusive listing agreement, signed on November 29, 1994; Plaintiff's Exhibit 3, the attachment to the listing agreement delineating the property to be leasable pursuant to said agreement; and Plaintiff's Exhibit 4, a flier prepared by defendant in the course of its efforts to lease the subject property.
Having considered all of the testimony presented, evaluated the credibility of the witnesses, and considered the arguments of counsel, including their written submissions, I conclude that plaintiff's request for relief pursuant to the First Count of its complaint should be granted; that plaintiff's CUTPA claim should be denied; and that all of defendant's claims pursuant to its counterclaim should be all denied.
I see no need to recount the testimony in great length in given that there is very little dispute concerning the facts in this case, as counsel both agree. The determinative issue may be stated as follows: Pursuant to the exclusive listing agreement (Plaintiff's Exhibit 2) does the defendant have the right to be paid a commission for leasing any portion of the subject premises including the areas upon which a movie theater was subsequently built; or did the defendant have the right to be paid a fee for leasing only a portion of the subject premises, not including the portion of the subject premises upon which the movie theater was built? A review of the full record, including the relevant documents and testimony, leads me to conclude that the defendant does not have the right to be paid a fee relative to the portion of the premises upon which the movie theater was built because, by the very terms of the exclusive listing agreement and the attachment, it was understood that this would not be part of the leasable space under the agreement.
Paragraph 1 of the listing agreement defines its scope. It states as follows:
 APPOINTMENT AS AGENT. You appoint us as your Exclusive Agent. You give us the exclusive right to LEASE the property known as: 836 Park Ave, Bloomfield, CT, consisting of approximately 82,000 sq. ft. of retail space as shown on the attached Schedule "A". You agree to refer all other agents to us for the office space shown on Schedule "A".
CT Page 1838
The evidence indicated that Plaintiff s Exhibit 2 contained certain revisions to an earlier agreement, Plaintiff's Exhibit 1. The evidence indicated that the revisions were suggested by plaintiff, but that the defendants inserted the words used in implementing the changes into the contract. The contract itself was drawn up by defendant.
The evidence was that during the term of the agreement, which was to expire at midnight on December 1, 1995, Mr. Beckenstein engaged in discussions with another agent in connection with the leasing of the portion of the premises upon which a movie theater has since been erected. Mr. Beckenstein testified that he never viewed these portions of the premises — described as the courtyard in testimony, and consisting of three white squares on the right side of Plaintiff's Exhibit 3 — as part of the agreement with defendant. Mr. Beckenstein also testified that he told Mr. D'Addabo of his intention to try to lease the courtyard area, and asked Mr. D'Addabo to provide some census date relative to that intention, which Mr. D'Addabo did. Defendant's Exhibit A. Mr. Beckenstein said that Mr. D'Addabo never expressed any indication that he believed he would be entitled to receive a commission with respect to a lease of the courtyard area. Mr. Beckenstein said he told Mr. D'Addabo about his intention to develop the courtyard area because he wanted to assist Mr. D'Addabo in leasing the space subject to the agreement by providing him with relevant information about what was being considered.
Mr. D'Addabo testified that with the exception of providing the census date, he was entirely uninvolved with the leasing or developing of the courtyard area. He testified at trial that when the agreement was signed, he understood that he could lease all of the space at 836 Park Avenue, including the courtyard area. However, at a deposition on January 7, 1997, he said "no" when asked if he considered the courtyard to be part of the property he was engaged to lease.
Defendant argues that there is some ambiguity over what was to be leasable. This argument is based, in part, on the different references to "retail space" and "office space" in Plaintiff's Exhibit 2. I do not agree. The determinative legal issue is what the parties intended when they entered into the contract, not at some subsequent time. Tomlinson v.CT Page 1839Board of Education, 226 Conn. 704, 629 A.2d 333 (1993); Briav. St. Joseph's Hospital, 153 Conn. 626, 220 A.2d 29 (1966). In light of the full record, including the plain language of the agreement and the attachment, as well as the trial testimony, I conclude that the parties understood, when the agreement was entered into, that it did not include the "courtyard area" as being within the scope of what was to be leased. The plain language of Plaintiff's Exhibit 2 itself in light of the attachment (Plaintiff's Exhibit 3) indicates this. When the intent conveyed by the terms of an agreement is clear and unambiguous, there is no room for construction, and a court cannot add new and different terms. Levin v.Massey, 232 Conn. 272, 278 (1995).
Visual inspection of Plaintiff s Exhibit 3 clearly evidences a differentiation between the colored-in areas — marked as retail(r) or office(o) space — and the nine solid white blocks making up the courtyard area. Examination of the back of Plaintiff's Exhibit 4 provides strong additional support for the conclusion that defendant understood that the courtyard was not included within the terms of the agreement as an area it would be attempting to lease. On the back of Plaintiff's Exhibit 4, a flier used to market the property, available space" is marked in green. The nine courtyard squares are conspicuously lacking in green.
Therefore, considering the testimony of Messrs. Beckenstein and D'Addabo, see Ruscito v. F-Dyne ElectronicsCo., Inc., 177 Conn. 149 (1979), Plaintiff's Exhibits 2 and 3, and Plaintiff's Exhibit 4, in light of the full record, I conclude that plaintiff has proven by a preponderance of the evidence that the parties did not intend when they entered into the agreement to include within its ambit the courtyard areas subsequently developed into a movie theater. See
Connecticut General Statutes Section 20-235a.
Consequently, I find for plaintiff on the First Count and conclude that plaintiff has no duty to pay any commission to defendant in connection with the leasing or development of the disputed space. See, e.g., Andrews v. MinnisaleRealty, Inc., 487 P.2d 603 (Colo.App. 1971); Texas Builders v.Keller, 39 Tex. Sup. Ct. J. 1075, 928 S.W.2d 479 (1966); andWiggins v. Schubert Realty Investment Co., 854 S.W.2d 794
(Ky Ct. App. 1993), all cited by plaintiff.[2]
CT Page 1840
After considering the full record, I find that plaintiff has failed to prove its CUTPA claim by a preponderance of the evidence and find for the defendant on Count Three.
After considering the counterclaim in light of the full record, I find that NERL has failed to prevail on any of its claims and find for Wintonbury Associates on all three counts of the counterclaim.
Judgment shall enter accordingly.
Douglas S. Lavine, Judge, Superior Court
Endnotes