[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED AUGUST 22, 1997
Jacoby has instituted this proceeding in eight counts against Paul R. Brinckerhoff, Ph.D. and John Rhinehart, M.D., arising from the doctors' allegedly negligent treatment of his former wife, Diane Jacoby. Diane is not a party to this action and has not asserted any causes of action against either defendant. The plaintiff has sued each defendant in four counts, two each in loss of consortium, one each in breach of contract, and one each for breach of a third-party beneficiary contract. CT Page 3184
He claims that during the course of his marriage to Diane, she was diagnosed as suffering from a manic-depressive disorder and was prescribed Lithium and other anti-depressant drugs. This treatment essentially stabilized her condition. Jacoby continues on that in approximately August of 1994, Diane began to see Dr. Brinckerhoff, a psychologist, for her condition. That doctor diagnosed Diane as not being manic-depressive and referred her to Dr. Rhinehart, a physician. While she was continuing counselling with Dr. Brinckerhoff, Dr. Rhinehart, in consultation with Dr. Brinckerhoff, began to wean Diane from her prior medication and substituted the drug Dilantin and dehydroepiandrosterone (DHEA).
The plaintiff claims that after Diane was removed from her previous drug therapy by the defendants, her condition deteriorated and, at the urging of Dr. Brinckerhoff, she was advised to leave her husband. Diane then entered upon a course of conduct typical of people suffering from severe manic-depression and eventually abandoned her children, left the State of Connecticut and was finally hospitalized in the State of Pennsylvania suffering from severe manic-depression with suicidal tendencies. Jacoby alleges that after the removal of the appropriate drug therapy from Diane, he took over full management of the children of the marriage until the couple was divorced in June of 1996.
Counts one and three of the complaint sound in loss of consortium against Dr. Rhinehart and Dr. Brinckerhoff, respectively. In these counts, the plaintiff claims that each of the defendants failed to properly diagnose and treat Diane for her psychological condition and thereby breached the standard of care in treating Diane. He alleges that as a result of the defendants' negligence, he suffered the "loss of his marriage and all its attributes, society and benefits as well as extreme emotional harm," the loss of the mother of his children within a marital context and the loss of love, support and consortium of his wife for the rest of his life.
Counts five and six reassert the facts of counts one and two against Dr. Rhinehart and Dr. Brinckerhoff, respectively. The plaintiff alleges further, however, that "Diane Jacoby is unwilling to bring any of her claims for negligence or malpractice against the defendants," that the plaintiff's cause of action "is based upon Diane Jacoby's rights against the defendants," and that "Diane Jacoby's unwillingness to seek recovery from [the] defendants . . . jeopardizes the plaintiff's potential for adequate compensation as a derivative cause of action." As a result, the plaintiff "seeks to preclude Diane Jacoby from interfering with his right to seek recovery by her unwillingness to join as a party plaintiff in this action." CT Page 3185
In counts seven and eight, Jacoby asserts breach of contract claims against Dr. Rhinehart and Dr. Brinckerhoff, respectively. He asserts that he and Diane entered into a contract with each of the defendants in which each defendant was to "provide [Diane] medical care and treatment within the standard of care of his profession." He further claims that each defendant breached each of the contracts, thereby causing injury to him.
In counts two and four, the plaintiff attempts to claim a breach of a third-party beneficiary contract claim against Dr. Rhinehart and Dr. Brinckerhoff, respectively. He asserts that Diane entered into a contract with each of the defendants, in which each defendant "was to provide her medical care and treatment within the standard of care of his profession," and that the plaintiff "was a third-party beneficiary of the contract[s]" between Diane and the defendants.
On January 8, 1997, Rhinehart moved to strike counts one, two, five and seven of the complaint on the grounds that each count is insufficient as a matter of law. Specifically, Rhinehart argues that: (1) Connecticut does not recognize a claim for loss of consortium separate and independent of the injured spouse's primary claim for negligence; (2) a breach of contract claim predicated upon a third-party beneficiary theory cannot lie on the facts of this case; and (3) the plaintiff has not alleged facts sufficient to maintain a breach of contract claim in the medical malpractice context. Brinckerhoff has also filed a motion to strike parallel counts three, four, six and eight on the same grounds.
The plaintiff has objected to Rhinehart's motion to strike and contends first that, although loss of consortium is a derivative claim, counts one, three, five and six assert more than a loss of consortium. It is the loss of the marriage itself and the attendant social and emotional status, collectively referred to by the plaintiff as the "marital res." He argues second that said counts actually sound in malpractice. Third, he urges this court to follow one jurisdiction that contemplates the possibility of bringing a loss of consortium claim independently from the injured spouse's underlying claims when, as in this case, joinder is not possible. Finally, as to counts two, four, seven and eight, the plaintiff argues that the facts of this case support the existence of contracts between the plaintiff, Diane Jacoby and the defendants, and urges this court to adopt the line of Superior Court cases that allows breach of contract claims related to medical treatment even if the parties agreed only for the doctor to perform within the CT Page 3186 standard of care. The plaintiff has not formally objected to Brinckerhoff's motion to strike and the court chooses to apply the objection on file to both motions.[1]
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Such motion "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Internal quotation marks omitted.)Faulkner v. United Technologies Corporation, 240 Conn. 576, 580, 588
(1997).
In Connecticut, a spouse has a claim for loss of consortium shown to arise from a personal injury to the other spouse caused by the negligence of a third party. Demarinis v. United Services AutomobileAssn. Casualty Ins. Co., 44 Conn. App. 172, 176 (1997). A consortium claim consists of elements of damages including loss of companionship, society, affection, sexual relations and moral support. Lynn v.Haybuster Manufacturing, Inc. 226 Conn. 282, 289 (1993); Hopson v. St.Mary's Hospital, 176 Conn. 485, 494 (1979). In recognizing that cause of action, our Supreme Court held that "because a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by adverse judgment on the merits."Hopson v. St. Mary's Hospital, supra. Hopson contemplates that consortium claims must be joined with the underlying claims to minimize inconsistent verdicts.
In the present case, however, the plaintiff has asserted loss of consortium claims separately and independently from his injured former spouse's potential negligence claims. Although he urges this court to rule otherwise, there is no authority in Connecticut for the proposition that a loss of consortium claim can be maintained absent a primary cause of action asserted by the injured spouse. Therefore, counts one, three, five and six cannot survive the motion to strike.
In his opposition to the defendants' motions to strike, the plaintiff contends that counts one, three, five and six assert more than a loss of consortium, but a loss of the "marital res." CT Page 3187 The plaintiff argues that the defendants were treating his and Diane's marriage, and were negligent in causing the termination of that marriage and the attendant social and emotional benefits. In the complaint, however, he alleges that the defendants treated Diane's psychological condition, and nowhere alleged that the plaintiff and his former wife were engaged in couples or marriage counselling. Moreover, he does not cite, and this court's independent research did not uncover any authority recognizing a cause action for the loss of the "marital res."
Jacoby also argues that counts one, three, five and six actually sound in medical malpractice asserted by him as a result of the defendants' negligent treatment of his and Diane's marriage, which negligent treatment caused the loss of such marriage. In order to assert a medical malpractice claim, the plaintiff must allege and prove, inter alia, that the defendant had a "duty to conform to a particular standard of conduct for the plaintiff's protection . . . "Labieniec v. Baker, 11 Conn. App. 199, 202 (1987). Even if the court were to construe counts one, three, five and six as asserting a malpractice claim, the plaintiff has not alleged any facts demonstrating that the defendants owed a duty directly to him in their treatment of his former wife's psychological condition.
As to the remaining breach of contract counts, "[a] physician may be subject to a claim for breach of contract arising from an agreement to perform professional services . . ." Mac's Car City,Inc. v. DeNigris, 18 Conn. App. 525, 530 (1989), citing Bria v. St.Joseph's Hospital, 153 Conn. 626 (1966). There is, however, a split of authority at this level regarding the elements of a viable breach of contract claim in the medical malpractice context. The majority of the cases have held that in order for a physician to be liable for breach of a contract with a patient, the physician must have made specific promises about the result of the treatment. See. ea.,Picarazzi v. Fichera, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 306212 (December 12, 1994) (Maiocco, J.,13 CONN. L. RPTR. 96), and cases cited therein (thorough analysis of the relationship between medical malpractice and breach of contract claims).[2] This line of cases holds that to assert a viable breach of contract claim in a medical malpractice context, "the plaintiff must allege that the defendant doctor assured or warranted a specific result . . . [R]equiring a special agreement . . . eliminate[s] those cases where the plaintiff has merely alleged that the defendant impliedly agreed to meet the requisite standard of care, or, in essence, impliedly agreed not to commit malpractice." (Internal quotation marks omitted.) Picarazzi v. Fichera, supra. The CT Page 3188 preceding line of cases represents the more reasoned approach, and this court is constrained to be consistent with its prior decision.[3]
In the present case, the plaintiff has not alleged any facts demonstrating that he or Diane contracted with the defendant doctors for a specific result. In fact, he alleges just the opposite, that the parties contracted with the defendants to "provide [Diane] medical care and treatment within the standard of care of his profession." Such an allegation is insufficient to support a claim for breach of contract in this case. Accordingly, counts seven and eight must also fall.
Finally, in counts two and four, Jacoby purports to assert a breach of a third-party beneficiary contract. Aside from suffering from the insufficiencies of doctor-patient contracts discussed above, these claims do not incorporate facts sufficient to bring them within the requirements of a third-party beneficiary claim. "The proper test to determine whether a [contract] creates a third-party beneficiary relationship is whether the parties to the [contract] intended to create a direct obligation from one party to the [contract] to the third party." Gateway v.DiNoia, 232 Conn. 223, 231 (1995). The plaintiff has not recited any facts to indicate that the defendants intended to assume a direct obligation to him. Counts two and four, therefore, are also legally insufficient.
The motion to strike is, accordingly, granted as to all counts it addressed.